UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANLISA PARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:14-CV-1808 (CEJ) |
| | ) |
| ROBERT A. MCDONALD, | ) |
| Secretary of the Department | ) |
| of Veterans Affairs, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for grant summary judgment pursuant to Rule 56. Plaintiff has not responded, and the time allowed for doing so has expired.

Plaintiff Janlisa Parris brings this action asserting claims of employment discrimination against her employer, the Department of Veterans Affairs. Plaintiff claims that the defendant discriminated against her on the basis of race and disability, retaliated against her for prior protected conduct, failed to accommodate her disability, and created a hostile work environment.

### I. **Background**

Plaintiff began working for the Department of Veterans Affairs in April 2008 as a GS-5 claims assistant. Gov-0009 [Doc. #28-3]. At all relevant times plaintiff was a Veterans Service Representative (VSR) and ultimately progressed to the GS-10 level. Gov-0010 [Doc. #28-3]. As a VSR, plaintiff processes claims of military veterans. Id. As a VSR is promoted to a higher grade level in the Agency, the

productivity and quality goals used to evaluate a VSR's performance increase. Id.

Plaintiff's direct supervisor was Randy Jones, an African-American male. Gov-00256 [Doc. #28-2]; Gov-0010 [Doc. #28-3]. Jones's official title was Supervisor Veterans Service Representative, but he was also referred to as a "coach." Gov-00256 [Doc. #28-2]; Gov-0010 [Doc. #28-3]. Jones supervised approximately 20–25 employees in total. Gov-00256 [Doc. #28-2]; Gov-0010 [Doc. #28-3]. Jones's job duties included running the daily operations of processing claims for veterans, monitoring the production and quality of the claims, and monitoring employees' leave. Gov-00257 [Doc. #28-2]; Gov-0010 [Doc. #28-3]. Before his promotion to supervisor, Jones worked as a VSR with plaintiff. Gov-00282 [Doc. #28-2]; Pl.'s Dep. 50:22–51:1 [Doc. #28-5].

Aaron Givens, an African-American male, is the Veterans Service Center Manager. Gov-00298 [Doc. #28-2]. From January 2010 until March 2011, Givens was Jones's direct supervisor. Gov-00299 [Doc. #28-2]. Givens had previously held positions as a coach and as a VSR. Gov-00298, 00300 [Doc. #28-2]; Gov-0010 [Doc. #28-3]. James Thomas Jr., an African-American male, worked in the Human Resources (HR) Department of the agency's office in St. Louis as an HR specialist from November 2005 to January 2007, as the HR liaison from January 2007 to August 2013, and as the EEO program manager thereafter. Gov-00307, 00310 [Doc. #28-2]. As the HR liaison, Thomas's job duties included processing employees' reasonable accommodation requests. Gov-00308 [Doc. #28-2]

## II. Summary Judgment Standard

Because defendant's motion cites to and relies upon matters outside the pleadings, the Court will consider the motion under the legal standard for summary

judgment. See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (comparing matters outside the pleadings to documents necessarily embraced by the complaint). Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Gannon Intern., Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. American Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

Pursuant to Local Rule 4.01, a party seeking summary judgment must submit a statement of uncontroverted material facts. E.D.Mo. L.R. 4.01(E). Defendant complied with this requirement. See Def.'s Statement [Doc. #28]. The rule further provides that "[a]ll matters set forth in the statement of the movant shall be deemed

admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 4.01(E). Plaintiff did not respond to defendant's motion or otherwise controvert defendant's statement of uncontroverted material facts. Accordingly, the Court will deem all matters defendant set forth in his statement that are supported by evidence in the record as admitted by plaintiff for purposes of summary judgment.

### III. Discussion

Plaintiff's bases her claims of discrimination on the following incidents: (1) Jones cancelled her downtime between January 2011 and April 2012; (2) Jones denied her sick leave request and marked her as absent without leave on March 21 and 22, 2011; (3) Jones issued her a warning of unacceptable performance on December 7, 2010, January 24, 2011, and February 18, 2011; (4) Jones placed her on a performance improvement plan on March 12, 2012; and (5) Givens denied plaintiff's request for reasonable accommodation of her disability on November 1, 2011. Additionally, as an overarching theory, plaintiff asserts that the discriminatory acts she alleges were part of a conspiracy against her. Pl.'s Dep. 46:9–62:9 [Doc. #28-5].

#### (A) Cancellation of Downtime

Plaintiff alleges that Jones discriminated against her based on race and created a hostile work environment when he cancelled her downtime in 2011 and 2012. Pl.'s Dep. 63:3–13, 66:15–68:4, 71:14–73:12 [Doc. #28-5]. "Downtime" is an extension of time granted to a VSR to process a claim beyond the amount of time generally allowed to work on a claim. Gov-00259, 00270 [Doc. #28-2]. Jones reviewed VSRs' use of downtime. Gov-00272 [Doc. #28-2]; Gov-0011–12 [Doc.

#28-3]. Downtime requests are awarded when there are special or abnormal circumstances which require more time to process a claim. Id. The cancellation of downtime reduces productivity level, which can impact a VSR's performance standards. Gov-00264, 00269 [Doc. #28-2]; Gov-0012 [Doc. #28-3].

To establish a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, plaintiff must show: (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006); Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003). In cases where direct evidence of discrimination is absent, the burden of proof then shifts to the employer "to present evidence of a legitimate, nondiscriminatory reason for its adverse employment action." Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008). "If the employer can articulate a nondiscriminatory reason, the burden returns to the employee to prove that the proffered reason is pretextual." Id. at 831–32. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

Plaintiff testified that Jones began cancelling her downtime immediately after becoming her supervisor, something that no prior supervisor had ever done. Gov-00284–86 [Doc. #28-2]; Pl.'s Dep 50:3–10, 74:6–14 [Doc. #28-5]. Despite plaintiff's allegations to the contrary, Jones also cancelled the downtime of other VSRs under his supervision. Pl.'s Dep. 70:1–71:13 [Doc. #28-5]; Gov-00269 [Doc.

#28-2]. The evidence establishes that plaintiff requested more downtime than any other VSR under Jones's supervision, Gov-00269 [Doc. #28-2]; Gov-0012 [Doc. #28-3], and that she consistently used downtime incorrectly. Gov-00269 [Doc. #28-2]; Gov-0023 [Doc. #28-3]. According to his undisputed testimony, Jones granted "quite a bit" of plaintiff's downtime requests. Gov-00271 [Doc. #28-2].

Between October 2011 and February 2012, plaintiff did not meet either her production or quality goals. Gov-0210–11 [Doc. #28-1]; Pl.'s Dep. 112:20–24 [Doc. #28-5]. Plaintiff blamed this on Jones's cancellation of her downtime. Gov-00291 [Doc. #28-2]. Plaintiff, however, admitted that the cancellation of downtime has no effect on a VSR's quality goals. Gov-00294 [Doc. #28-2]; Gov-0013 [Doc. #28-3]. Plaintiff testified that she could not recall ever meeting her production goals since she began her employment at the Agency in 2008, until she was placed on a performance improvement plan. Gov-00295 [Doc. #28-2].

Plaintiff complained to Givens via email regarding Jones's cancellation of her downtime. Gov-00299 [Doc. #28-2]. Givens discussed the situation with Jones and recalled Jones showing him that plaintiff had input her downtime incorrectly. Gov-00299, 00306 [Doc. #28-2]; Gov-0012 [Doc. #28-3]. Givens was not aware of plaintiff ever being disciplined for improperly inputting downtime. Gov-00306–07 [Doc. #28-2]. Plaintiff's work was mitigated (*i.e.,* she was not held accountable for mid-year changes in production schedules) and her failure to meet her productivity goals was not considered in several performance appraisals. Gov-0218–31 [Doc. #28-1]; Gov-0013–14 [Doc. #28-3].

Plaintiff has presented no evidence showing that she suffered an adverse employment action or that she was she treated differently than similar situated

employees. Even if plaintiff had established a prima facie case of race discrimination, she has not demonstrated that the nondiscriminatory reason articulated by defendant for canceling her downtime is pretextual. Accordingly, there is no genuine issue of disputed material fact for trial with respect to plaintiff's race discrimination claim as it relates to the cancellation of her downtime.

For the same reasons, plaintiff also has not established a hostile work environment claim with respect to the cancellation of her downtime. To establish a hostile work environment claim, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her protected-group status; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take appropriate remedial action. Nichols v. Tri-National Logistics, Inc., 809 F.3d 981, 985 (8th Cir. 2016). To be actionable, the work environment must have been both objectively and subjectively offensive. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 759 (8th Cir. 2004). To decide whether a work environment is objectively offensive, the court must "examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. Id.

Plaintiff has not shown that she was subjected to unwelcome harassment. Jones's actions were not discriminatory or otherwise objectively offensive. The undisputed facts are that plaintiff misused and abused downtime, and Jones cancelled her downtime when appropriate, just as he did with other employees. Plaintiff's

allegations that Jones was rude to her on one occasion and that generally avoided talking to her do not rise to the requisite level of objectively offensive work conditions so as to constitute a hostile work environment. Pl.'s Dep. 71:14–73:12 [Doc. #28-5]. Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1128 (8th Cir. 2000) (hostile work environment claim requires proof of "[m]ore than a few isolated incidents."). Therefore, defendant is entitled to judgment as a matter of law on plaintiff's race discrimination and hostile work environment claims arising from the cancellation of downtime in 2011 and 2012.

### B. AWOL Designation

Plaintiff alleges that Jones and Givens discriminated against her based on race and disability, retaliated against her for prior EEO activity, and created a hostile work environment when Jones marked her as absent without leave (AWOL) in March 2011. Pl.'s Dep. 77:20–79:13 [Doc. #28-5]. Plaintiff claims Jones is biased against African-Americans and did not treat Caucasian employees the same way. Pl.'s Dep. 83:18–84:15 [Doc. #28-5]. Plaintiff's allegations against Givens with respect to the AWOL designation are solely based on the role Givens held as Jones's supervisor. Pl.'s Dep. 78:2–18 [Doc. #28-5].

The undisputed evidence shows that plaintiff left work early on March 21, 2011, without making the required request for sick leave. Gov-00294, Gov-00265 [Doc. #28-2]. Although plaintiff was initially designated as AWOL, that designation was rescinded by Jones after plaintiff returned to work. Gov-00266, 00289 [Doc. #28-2]. Plaintiff makes no showing that she was treated less favorably than similarly situated employees and no showing that the initial AWOL designation was made because of her disability. Other than her status as a member of a protected class, plaintiff also has

not alleged or established any other element of a hostile work environment claim with respect to the AWOL designation. Defendant has articulated a legitimate non-discriminatory reason for marking her as AWOL, which plaintiff has not refuted. Moreover, Givens's position as Jones's supervisor does not automatically make him complicit in any alleged discrimination.

Plaintiff's claim that she was retaliated against for making an EEO complaint against Thomas is also unsupported by the record. Plaintiff has presented no evidence that Thomas hired a relative for a position that plaintiff was qualified for or that either Jones or Givens was aware of her EEO claim against Thomas. Gov-00273, Gov-00302 [Doc. #28-2]. "A party's unsupported self-serving allegation that her employer's decision was based on retaliation does not establish a genuine issue of material fact." Gibson v. Am. Greetings Corp., 670 F.3d 844, 857 (8th Cir. 2012) (quoting Jackson v. United Parcel Serv., Inc., 643 F.3d 1081, 1088 (8th Cir. 2011)). Defendant thus is entitled to judgment as a matter of law on plaintiff's claims of discrimination based on race and disability, retaliation for prior EEO activity, and hostile work environment as they relate to Jones's designation of plaintiff as AWOL in March 2011.

### C. Warnings of Unacceptable Performance

Plaintiff alleges that the warnings of unacceptable performance that were issued to her in 2010 and 2011 were discriminatory. However, plaintiff admits that she was not meeting either her productivity or quality goals before being placed on a performance improvement plan and she does not dispute that she frequently misused or abused downtime. The warnings were intended to give plaintiff formal, written notice that she was not achieving her productivity goals. Certainly, it is appropriate

for an employer to let an employee know when she is not meeting the employer's expectations. Further, plaintiff has alleged nothing linking the letters warning to her disability. Thus, defendant is entitled to judgment as a matter of law on plaintiff's claims of discrimination and retaliation as they relate to the issuance of the warnings of unacceptable performance.

### D. Performance Improvement Plan

Jones placed plaintiff on a 90-day performance improvement plan beginning on March 12, 2012 after she had failed to meet cumulative productivity or quality standards for five months. Gov-0210–11 [Doc. #28-1]; Gov-00268–69 [Doc. #28-2]. While an employee is on the plan, she is not allowed to work overtime or on a compressed four-day week tour of duty, which are considered privileges reserved for employees who are meeting their goals. Pl.'s Dep. 108:14–20, 113:3–114:16 [Doc. #28-5]; Gov-00272, 00304 [Doc. #28-2]. Prior to being placed on the plan, plaintiff received warnings of unacceptable performance. Gov-0215–17 [Doc. #28-1]. As part of the plan, plaintiff was provided additional training and assistance on a daily basis to help her meet her goals. Gov-0210–11 [Doc. #28-1]. After plaintiff successfully completed her 90-day placement, she was able to return to working overtime and a compressed schedule. Pl.'s Dep. 111:12–112:10, 115:22–116:11 [Doc. #28-5]; Gov-0209 [Doc. #28-1].

Plaintiff admitted that she had not been meeting her production or quality goals. Gov-00290–91 [Doc. #28-2]; Pl.'s Dep. 112:20–24 [Doc. #28-5]. Also, the evidence shows that Jones placed two other employees, one Caucasian and one African-American, on performance improvement plans for failing to meet productivity or quality goals during the relevant time period. Gov-00269 [Doc. #28-2]. They,

too, were not allowed to work overtime or a compressed work schedule. Gov-00275 [Doc. #28-2].

Plaintiff has not demonstrated the existence of a genuine issue of material fact on her race discrimination or hostile work environment claims arising from being placed on the performance improvement plan. The undisputed facts in the record indicate that Jones implemented the plan policy uniformly. Plaintiff's poor performance was a legitimate non-discriminatory reason for the defendant's action, and plaintiff has not shown that it is pretextual. Further, the placement on the plan did not prevent plaintiff's advancement within the agency, as the evidence shows that she was later promoted. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's claims arising from her placement on a performance improvement plan.

### E.    Reasonable Accommodation

Next, plaintiff alleges that Givens discriminated against her based on her disability when he denied her request for a reasonable accommodation. Pl.'s Dep. 93:17–94:14 [Doc. #28-5]. Plaintiff also alleges Givens created a hostile work environment by requiring her to submit a formal request with supporting medical records to support her claim for a reasonable medical accommodation. Pl.'s Dep. 93:17–94:14, 97:15–104:14 [Doc. #28-5]. The disabilities plaintiff alleges for which she needed an accommodation are major depression disorder and anxiety, which affect her abilities to focus and concentrate and cause her claustrophobia. Gov-00277–78 [Doc. #28-2].

Because plaintiff is a federal employee, the Rehabilitation Act of 1973 is the exclusive vehicle for judicial remedy of her disability discrimination claim. 29 U.S.C.

§§ 701–797; Gardner v. Morris, 752 F.2d 1271, 1278 (8th Cir. 1985). To establish a prima face case of disability discrimination under the Rehabilitation Act, "a plaintiff must show: (1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008) abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). The Rehabilitation Act adopts the definition of "disability" set forth in the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(a)(A); 29 U.S.C. § 705(9). In a failure to accommodate case, discrimination under the Rehabilitation Act occurs if "a covered entity [does] not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). It is the disabled employee's initial burden to make her employer aware of the need for an accommodation, provide relevant details of her disability, and, if not obvious, provide the reason that her disability requires an accommodation. EEOC v. Convergys Customer Mgmt. Grp., Inc., 491 F.3d 790, 795 (8th Cir. 2007); see also Peyton v. Fred's Stores of Ark., 561 F.3d 900, 903 (8th Cir. 2009) ("[O]rdinarily it is the plaintiff employee, rather than the defendant employer, who must initiate the interactive process [of discussing reasonable accommodation]."). Once the employer is made aware of the legitimate need for an accommodation, the employer must engage in an interactive process to determine whether reasonable accommodations are possible. Id.; Buboltz, 523 F.3d at 870.

"If such accommodations are possible, then the employer must reasonably accommodate that request, but need not provide the exact accommodation requested." Buboltz, 523 F.3d at 870.

Plaintiff's supervisors prior to Jones had allowed her to sit at a desk by a window. Gov-00278–79 [Doc. #28-2]. In November 2011, Agency employees were being moved to different seating areas. Gov-00266 [Doc. #28-2]. Plaintiff told Jones that she needed to be seated near a window as an accommodation for a medical disability. Id. At Jones's instruction, plaintiff completed a reasonable accommodation request that was forwarded to Givens and Thomas for review. Id. Givens denied plaintiff's formal medical disability accommodation request on the basis that the medical evidence she submitted did not support her request. Nevertheless, he allowed plaintiff to remain seated at her desk by a window for her comfort. Gov-00266, 00289–90, 00306, 00308, 00314 [Doc. #28-2]; Pl.'s Dep. 103:22–104:7 [Doc. #28-5]; Gov-0248 [Doc. #28-1]. It is undisputed that plaintiff was never moved away from a window. Gov-00292 [Doc. #28-2]; Pl.'s Dep. 101:15–22 [Doc. #28-5].

At the administrative hearing, plaintiff was unable to offer medical evidence to support her claim that she had been diagnosed with claustrophobia requiring her to be seated near a window. Gov-00290 [Doc. #28-2]. Plaintiff acknowledged that her physician did not include a reference to or a diagnosis of claustrophobia in her medical records. Pl.'s Dep. 98:19–101:8 [Doc. #28-5].

Plaintiff's claim of disability discrimination fails. Plaintiff has produced no evidence to establish that she has a disability under the Rehabilitation Act. She also failed to provide sufficient medical support to explain the relevant details of her

disability and establish a legitimate need for an accommodation. See <u>Convergys Customer Mgmt. Grp., Inc.</u>, 491 F.3d at 795. Despite this lack of support, plaintiff received the accommodation she wanted—a desk by the window. Even if plaintiff had established that she is disabled, she cannot show that she suffered any adverse employment action or a refusal to accommodate. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's disability discrimination claim.

### F. Conspiracy

Plaintiff testified that she filed an EEO complaint in 2009 after being denied a promotion to a position for which Thomas's daughter was hired. Pl.'s Dep. 47:22–49:8 [Doc. #28-5]. According to plaintiff, Thomas was demoted from his position as HR director as a result of her nepotism complaint, and that his demotion gave rise to the conspiracy against her. Pl.'s Dep. 53:10–57:23 [Doc. #28-5]. It is undisputed, however, that Thomas was not a director or manager of HR, nor was he demoted. Gov-00307, 00310 [Doc. #28-2]. It is also undisputed that Thomas was not involved in the selection or hiring decisions of any relatives. Gov-00308 [Doc. #28-2]. Finally, it is undisputed that neither Jones nor Givens was aware of plaintiff's 2009 EEO complaint against Thomas. Gov-00273, 00302 [Doc. #28-2]. Plaintiff's conspiracy claim has no basis in fact.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #26] is **granted.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of May, 2016.